UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

**REPORT**
**AND**
**RECOMMENDATION**

              -against-                              18-CR-394 (SJF)(AYS)

JOHN DRAGO,
                       Defendant.
-----------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

Defendant John Drago ("Drago" or the "Defendant") is charged in an indictment (the "Indictment") with banking and tax crimes arising out of his operation of check cashing businesses known as the "Kayla Companies" (or "Kayla").  The Kayla Companies are located within this District, with their main office maintained in Farmingdale, New York.  (See generally Docket Entry herein ("DE") 1.)  The Indictment alleges that Drago is the person who is responsible for the operations of Kayla, including serving as its compliance officer.

According to the Indictment, Drago violated Internal Revenue laws and regulations by failing to truthfully account for and pay Federal Insurance Contributions Act ("FICA") taxes, failing to file the required quarterly Federal tax returns, and by failing to inform the Internal Revenue Service of payment of cash wages.  (Indictment ¶ 6-7.)  Drago is also charged with violating the Bank Secrecy Act (the "BSA"), a statute stated to have been enacted to address the problem of money laundering through financial institutions.  With respect to the BSA, Drago is charged with failing to properly file Currency Transaction Reports ("CTR's") with the Financial Crimes Enforcement Network (the "FinCEN").   CTR's are required to be filed by covered financial institutions for each transaction in currency, such as a deposit, withdrawal or exchange of payment in excess of $10,000.  The responsibility to file exists, for example, when multiple

1

checks in the amount of $10,000 or less are cashed on the same day, or the total value of such checks exceed $10,000.  (Indictment ¶ 11.)  The Government alleges that Drago instructed Kayla employees and customers to engage in a course of conduct that would allow Kayla to operate its business, in many instances, without filing required CTR's.  Those activities include cashing multiple checks totaling in excess of $10,000 (on a single day for certain customers), without filing CTR's, and telling certain customers who presented checks in excess of $10,000 to return to Kayla with multiple checks in amounts less than $10,000.  (Indictment ¶ 15.)  Drago is also charged with violating the BSA by failing to develop and properly implement an effective money-laundering program "reasonably designed to prevent" a check casher from being used to facilitate money laundering.  (Indictment ¶ 13.)

The foregoing factual allegations are set forth in support of the Indictment which charges Drago in eight separate counts as follows:

- Count One:    Failure to File CTR's on or between January 1, 2010 and October 31, 2013;

- Count Two:    Failure to Maintain an Effective Anti-Money Laundering Program to control for filing of truthful CTR's and failing to provide adequate education and training of personnel in connection with such required policies;

- Count Three:   Structuring Financial Transactions conducted by Kayla to avoid compliance with procedures regarding the filing of CTR's; and

- Counts Four through Eight: Failure to Collect and Pay over Taxes on or between April 1, 2012 and July 31, 2013 by failing to properly collect, account for and pay over FICA taxes to the IRS.

Before this Court, upon referral for Report and Recommendation from the Honorable Sandra J. Feuerstein, are Drago's motions to dismiss the Indictment and to suppress evidence. This Court was referred the motions on May 28, 2019. On June 11, 2019, counsel appeared for a conference to discuss the scope of the pending motions and their positions as to the necessity for any hearings.[1]

For the reasons set forth below, and upon review of the parties' papers and their positions as set forth during the conference, this Court respectfully recommends that the motion to dismiss the Indictment on the ground of pre-indictment delay be denied without a hearing, and without prejudice. The Court further recommends that the request for a <u>Franks</u> hearing be denied. Finally, the Court finds that the warrant executed in 2013, pursuant to an affidavit, failed to mention any crime with which Kayla was charged, and therefore failed to connect the broad search allowed with the suspected commission of any crime. Accordingly, the warrant violated the particularity clause of the Fourth Amendment. Caselaw sets forth the very limited circumstances where the conduct of officers executing such a warrant, considered objectively under the totality of the circumstances, avoids the extreme remedy of exclusion of all evidence seized. While this case appears to fall outside of the circumstances excusing a facially invalid warrant from the remedy of exclusion, the Court will afford the Government the opportunity to show otherwise. Accordingly, this Court will hold a hearing to determine the facts surrounding the 2013 execution of the warrant at the Kayla office.

---

[1]    This matter was previously referred to the Honorable A. Kathleen Tomlinson, before whom the parties previously appeared. At the conference before this Court, counsel took the position that while Magistrate Judge Tomlinson set aside time for a possible hearing, no firm decision was reached as to the necessity or scope of any such hearing. Accordingly, this Court visits those issues anew.

I.      The Motions

As noted, Drago's motion seeks dismissal and/or suppression of evidence.[2]  Dismissal is sought on the ground that the Government engaged in unconstitutional pre-indictment delay between its 2013 search of Drago's business and his 2018 indictment.  The suppression motion is made with respect to a 2013 affidavit submitted to then Magistrate Judge William D. Wall (the "Affidavit"), and a warrant executed pursuant thereto authorizing the search of the business premises of Kayla (the "Warrant").[3]  The motion seeks exclusion of the fruits of a search conducted pursuant to the Warrant for two separate reasons.  First, Drago seeks a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), with respect to his claim that the agent swearing to the Affidavit made intentional misstatements to Magistrate Judge Wall.  Next, the motion seeks suppression on the ground that the Warrant presented during the search of Kayla violated the Fourth Amendment's particularity clause, and that the remedy of exclusion must follow.

II.     Disposition of the Motions and the Necessity for Hearings

A.      The Motion to Dismiss for Pre-Indictment Delay
        Should be Denied Without a Hearing and Without Prejudice

Pre-indictment delay violates the Due Process clause of the Fifth Amendment to the Constitution where the delay prejudices the presentation of a defense and is engaged in by the

---

[2]      Drago's motion also raises other issues.  This decision sets forth the Court's rulings only with respect to the motion to dismiss, and those branches of the motion involving requests for hearing, i.e., the request for a Franks hearing and the arguments raised with respect to the execution of the search warrant in 2013.

[3]      Drago initially also moved to suppress evidence seized pursuant to a 2018 warrant. During the June 11, 2019 appearance before this Court, counsel made clear that the Government is not in possession of, and will not use, any evidence allowed to be collected under that warrant, and the cell phone that was the subject of the warrant was returned to the Defendant.  See Transcript of Proceeding dated June 11, 2019 ("Tr.") at 8.  Accordingly, any motion with respect to the 2018 warrant issued for search of a cell phone is moot.

Government for an improper purpose.  See United States v. Cornielle, 171 F.3d 748, 752 (2d Cir. 1999).  Such conduct violates a defendant's due process rights because it "departs from fundamental notions of 'fair play.'"  Id. (quoting United States v. Lovasco, 431 U.S. 783, 795 (1977)).  Where such a claim is raised, the defendant bears the burden of proving a due process violation.  Thus, it is for the defendant to prove "both that he suffered actual prejudice because of the alleged pre-indictment delay and that such delay was a course intentionally pursued by the government for an improper purpose."  United States v. Schaefer, 859 F. Supp. 2d 397, 414 (E.D.N.Y. 2012) (quoting Cornielle, 171 F.3d at 752) (emphasis in original) (additional citation omitted).

"[T]he statute of limitations is 'the primary guarantee against bringing overly stale criminal charges.'"  Cornielle, 171 F.3d at 751 (quoting United States v. Marion, 404 U.S. 307, 322 (1971)) (additional citation omitted).  While charges brought within the statute of limitations may still violate a defendant's due process rights, a due process challenge succeeds only if a defendant can show that the delay (1) "caused substantial prejudice to [the defendant's] right[] to a fair trial" and (2) "was an intentional device to gain tactical advantage over the accused." Marion, 404 U.S. at 324 (citations omitted).  This second element may be satisfied if the Government "delayed . . . in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges."  United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency, 461 U.S. 555, 563 (1983).  Whether pre-indictment delay has violated a defendant's due process rights is a fact-based inquiry.  See Marion, 404 U.S. at 324-35; Lovasco, 431 U.S. at 797.

A showing of actual prejudice may be found where there is a "loss of documentary evidence or the unavailability of a key witness."  Cornielle, 171 F.3d at 752 (citing cases).

However, "[f]aded recollections and missing peripheral witnesses are not enough." United States v. Rubin, 609 F.2d. 51, 66 (2d. Cir. 1979) (citing United States v. Vispi, 545 F.2d 328, 331-32 (2d Cir. 1976)). "[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim." Lovasco, 431 U.S. at 790. The court must also consider the "reasons for the delay." Id. Prosecutors are not required to "file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." Id. at 791. "[I]nvestigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused.'" Id. at 795 (quoting Marion, 404 U.S. at 324). Therefore, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Id. at 796.

Here, Drago relies on the passage of nearly five years between the 2013 search of Kayla and his indictment to support his claim for dismissal. He argues that dismissal is required because the Government has not come forward with evidence to justify its delay. (DE [39-1] at 51-52.) To the extent Drago argues that the burden is on the Government to show its reasons for failing to indict him until 2018, he is wrong. As noted above, the law is clear that it is the defendant who bears the burden of coming forward and proving the elements of actual prejudice and intentional wrongful conduct on the part of the Government. See e.g., Schaefer, 859 F. Supp. 2d at 413.

Although the Government does not bear the burden Drago seeks to impose, it has nonetheless come forward with information sufficient to not only deny the motion at this time, but also sufficient to deny any request for a separate hearing on the issue of delay. Thus, in addition to noting that the statute of limitations has not run as to the charged crimes – a fact that

weighs against dismissal – the Government has explained that the execution of the 2103 Warrant was merely the first investigative step in building its case against Drago. The Indictment charges a broad scheme of financial crimes that are only properly pieced together after a review of voluminous business records. To the extent that the records seized are to be relied upon, they remain available for Drago to interpret in support of his defense. Thus, Drago cannot rely on any argument that the passage of time has eroded his ability to present a defense with respect to the documentary evidence. Moreover, at this point in the proceedings, Drago cannot satisfy his heavy burden by arguing that the age of one witness places their availability in question. Nor can he show any improper purpose on the part of the Government. Indeed, it is without question that at least some of the delay resulted from Defendant's change of counsel and engagement in negotiations with the Government – facts that cannot be denied.

The cases relied upon by Drago in support of his claim of unconstitutional delay are all readily distinguishable. In United States v. Wai Ho Tsang, 632 F. Supp. 1336 (S.D.N.Y. 1986), the court granted the defendant's request for a hearing as to the claim that pre-indictment delay deprived defendant of due process. See Tsang, 632 F. Supp. at 1339. There, however, the defendant was charged with crimes that were allegedly committed as a minor, but he was not indicted until after he turned twenty-one. See id. The delay in indictment deprived the defendant of the protections afforded by the Federal Juvenile Delinquency Act. See id. The defendant's "change in status from a juvenile to an adult offender" was "not inconsequential since it at least deprived [defendant] of a judicial hearing on whether it would be in the interests of justice to prosecute him as an adult rather than as a juvenile." Id. On these grounds, the court granted defendant's request for a hearing to determine "whether there was an illegitimate basis underlying the delay in filing the indictment." Id. The peculiar facts of that case clearly

7

distinguish it from Drago's situation.  Unlike defendant Tsang, Drago can claim no changed "status" that would prejudice him in asserting any particular defense in this prosecution.

United States v. Gross, 165 F. Supp. 2d 372 (E.D.N.Y. 2001), also relied upon by Drago, is similarly distinguishable.  There, the government indicted defendants for bank fraud offenses allegedly committed nearly ten years earlier.  See Gross, 165 F. Supp. 2d at 374-75.  The indictment barely survived the ten-year statute of limitations, and the court held a due process hearing to determine the reason for the government's pre-indictment delay.  See id. at 375. During that extended delay, it was found that "documents and other evidence were lost, businesses in possession of critical documents collapsed, and witnesses died." Id. at 380.  This established the defendants' "actual prejudice." Id. at 381.  Prejudice was clearly established in Gross, where the government claimed it had investigated for six years, but the evidence indicated that the investigation had taken only ninety-four days.  See id. at 384.  The absence of any "legitimate investigatory reason" to justify this "extreme delay" resulted in a finding of "actual and severe prejudice." Id. at 385.  Dismissing the indictment in that case, the court nonetheless acknowledged that dismissal was a remedy appropriate only in "rare instances." Id.  Here, unlike the "rare" case in Gross, Drago does not assert that any "critical documents" have been lost.  As noted above, while the Government does not bear the burden of excusing or explaining any delay, it has come forward with explanations that distinguish this case from Gross.

The loss of key evidence that led to dismissal of the indictment for undue delay in United States v. Santiago, 987 F. Supp. 2d 465 (S.D.N.Y. 2013) similarly distinguishes that case.  In Santiago, the court held a due process hearing and ultimately dismissed the defendant's indictment for reckless assault in connection with a charge arising out of a shooting of a fellow marine in Iraq.  See Santiago, 987 F. Supp. 2d at 467.  While the Government alleged Santiago

8

had been recklessly playing with his gun before the shooting, it did not indict him for the shooting until nearly five years after the incident forming the basis for the charge.  See id. During that time, an Iraqi translator, the only eye witness to the incident other than the defendant and the victim, had disappeared.  See id. at 485.  Because the translator had previously stated that defendant was not playing with his gun, the passage of time and the witness unavailability resulted in the irretrievable loss of testimony that was "exonerative of recklessness" and "critically important" to the defense.  Id.  In addition, the court in Santiago found that the government's delay was "made in reckless disregard of the fact that the war in Iraq was ending, and that in its wake the one person who had ever made statements exonerating [defendant] of recklessness might disappear."  Id. at 492.

Nor can Defendant rely on United States v. Morrison, 518 F. Supp. 917 (S.D.N.Y. 1981), in support of his claim for dismissal.  There, defendant was a prisoner who allegedly assaulted a correctional officer.  See Morrison, 518 F. Supp. at 918.  The government did not indict the defendant for six months, in which time the prison, in accord with policies known to the government, destroyed its list of inmates.  See id.  As a result, defendant could not locate potential eyewitnesses to the alleged assault who could have provided exculpatory testimony. See id.  The government was held to have been "gross[ly] negligen[t]" because it "knew or should have known" of the list's importance.  Id. at 918; See also United States v. Jackson, 488 F. Supp. 2d 866, 873 (D. Neb. 2007) (finding that a four-year pre-indictment delay caused the defendant substantial prejudice, because "if the charges had been promptly and properly filed against the defendant, reliable evidence would likely have been available and not destroyed.").

Unlike the defendants in the cases relied upon by Drago, the passage of time has neither deprived him of an opportunity to take advantage of a particular defense, nor impaired his ability

to access key documents or witnesses. At worst, some witnesses may have aged. However, Drago makes no showing, at this time, as to the particular importance of any such witness, nor their unavailability. In sum, there are no facts upon which this Court can rely in support of a hearing, much less dismissal of the Indictment because of a Constitutional violation. Thus, the Court holds that Drago has not come forward with any argument, at this time, to adequately support his heavy burden of showing a due process violation.

In light of the foregoing, this Court recommends that the motion to dismiss the Indictment on the ground of pre-indictment delay be denied at this time, without the necessity of a hearing. The Court further recommends, as requested by the Defendant, that the denial of the motion be without prejudice to renewal if Defendant can later prove that the unavailability of any witnesses has substantially prejudiced his defense. However, even if that argument can be made, Defendant will also face the heavy burden of showing Government misconduct. At this time, neither prejudice nor misconduct is shown, and the motion to dismiss should therefore be denied.

B.    The Motion to Suppress: Request for a *Franks* Hearing

1.    The Motion to Suppress Based Upon Alleged False Statements Made in Support of the Search Warrant Affidavit Should Be Denied Without a *Franks* Hearing

The first branch of Drago's suppression motion is directed at the veracity of statements made in the Affidavit submitted to Magistrate Judge Wall in 2013. Those statements were made by Special Agent Snedeker. Drago seeks a hearing, pursuant to Franks v. Delaware, 438 U.S. 154 (1978), so that he can show falsity and a consequential lack of probable cause. (Tr. 20.) The Government argues, in its Memorandum of Law, that Drago fails to make the threshold showing necessary for the court to order a Franks hearing. While the Government appeared to concede the necessity of a Franks hearing at the June 11, 2019 conference, this Court's review of the case law and documents before it reveals the merit of the argument presented in the

10

Government's Memorandum of Law.  That is because, on review as discussed below, the Court finds that all of the alleged deficiencies in the Affidavit are not intentional misstatements undermining probable cause, but rather, disagreements with inferences to be drawn from those statements.

A defendant is entitled to a <u>Franks</u> hearing if they can satisfy a two-part test: The defendant must (1) make a "substantial preliminary showing" that the affiant "knowingly and intentionally, or with reckless disregard for the truth," included a false statement in the warrant affidavit, and (2) the allegedly false information was "necessary" to the magistrate's finding of probable cause.  <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978).  There is a substantial "presumption of validity" regarding challenged affidavits.  <u>Franks</u>, 438 U.S. at 171. Thus, to be entitled to a hearing, a defendant's challenge must "be more than conclusory and must be supported by more than a mere desire to cross examine."  <u>Id.</u>  Defendant's allegations of deliberate falsehood or reckless disregard for the truth "must be accompanied by an offer of proof."  <u>Id</u>d.  In particular, a defendant must point to the specific portions of the affidavit that are allegedly false.  <u>See</u> <u>id.</u>

"[E]very statement in a warrant affidavit does not have to be true." <u>United States v. Martin</u>, 426 F.3d 68, 73 (2d Cir. 2005) (quoting <u>United States v. Canfield</u>, 212 F.3d 713, 718 (2d Cir. 2000)).  With regard to omissions, "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation."  <u>United States v. Awadallah</u>, 349 F.3d 42, 67-68 (2d. Cir 2003) (quoting <u>United States v. Colkley</u>, 899 F.2d 297, 300 (4th Cir. 199)).  "<u>Franks</u> protects against omissions that are <u>designed to mislead</u>, or that are made in <u>reckless regard of whether they would mislead</u>, the magistrate."  <u>Awadallah</u>, 349 F.3d at 68 (quoting <u>Colkley</u>, 899 F.2d at 301) (emphasis in original).

Even if a defendant shows that false statements were made in an affidavit, if probable cause remains when the allegedly false statements are set aside, no hearing is required. See Franks, 438 U.S. at 172. A defendant "who argues that a warrant was issued on less than probable cause faces a heavy burden." Rivera v. United States, 928 F.2d 592, 602 (2d. Cir. 1991). Importantly, a court must give "'great deference' to a judge's determination that probable cause exists." United States v. Salameh, 152 F.3d 88, 113 (2d. Cir. 1998) (quoting United States v. Jakobetz, 955 F.2d 786, 803 (2d Cir. 1992)). Moreover, courts will "resolve any doubt about the existence of probable cause in favor of upholding the warrant." Salameh, 152 F.3d at 113 (citation omitted).

According to Drago, the Affidavit is "replete with inaccurate statements and omissions that painted an unfairly nefarious portrait of Kayla." (DE [39-1] at 33.) In particular, Drago alleges that Agent Snedeker misrepresented facts with respect to the content of certain tape recordings, his conclusions based upon statistical analyses, and improperly relied on statements of cooperators who had themselves pled guilty to crimes similar to those alleged in the Indictment. Each of Drago's arguments might lead a finder of fact to agree with Drago's interpretation of tapes, testimony and calculations. However, they do not compel the conclusion that Drago's version of the events must be accepted, and that, therefore, Agent Snedeker misled the Magistrate Judge. Drago's arguments, taken piecemeal or together, support only a different interpretation of the facts offered by Agent Snedeker; they do not require a finding that the agent lied to or misled Magistrate Judge Wall. Indeed, as argued by the Government in support of the Affidavit, each of these statements may be logically inferred to support probable cause of criminal activity at Kayla. Drago can certainly argue otherwise. His interpretations, however, do not negate a finding of probable cause.

In addition to arguing that certain statements in the Affidavit are untrue or misleading, Drago makes the general argument that the Affidavit improperly characterizes the business of check-cashing, as a whole, as inherently illegal.  Thus, he complains that Agent Snedeker painted an unfair picture of the check cashing business in general, discounting the fact that such businesses are, indeed, legitimate.  While the Affidavit certainly characterizes Kayla's business practices as illegal, it nowhere states that Kayla engaged in illegal business practices simply by virtue of the fact that it is engaged in the business of check cashing.  To the contrary, the Government describes the regulation of such businesses within the framework of Federal banking regulation.  Kayla's principal is indicted here, not because he was engaged in the business of check cashing, but because of the way in which Drago operated that business, as set forth in the Indictment.

Finally, this Court holds that even if the alleged misstatements are excised from the Snedeker Affidavit, the remainder of the statements set forth in that document are sufficient to support a finding of probable cause to search Kayla.  In particular, the Affidavit refers to the testimony of several witnesses and goes into detail as to their experiences with the structuring of financial transactions at Kayla.  (Affidavit ¶¶ 11-27.)  These statements alone are sufficient to support Magistrate Wall's finding of probable cause.

For the foregoing reasons, this Court recommends that the motion to suppress based upon false statements alleged to have been made to Magistrate Judge Wall in support of the July 29, 2013 Affidavit be denied without the necessity of holding a <u>Franks</u> hearing.

C.     <u>The Motion to Suppress: Lack of Particularity</u>

Drago argues that the Warrant fails both for failing to specify the crimes for which evidence was sought and also for the use of extraordinarily broad language when describing the

categories of documents to be seized.  (Tr. 11.)  It is also Defendant's position that case law

rejects application of a good faith cure for the Warrant.  Thus, Drago argues that there is no need

for any hearing, and the evidence seized pursuant to the facially invalid Warrant must be

suppressed.  He also argues that even if he is wrong on this aspect of the law, the facts in this

case (including allegations as to statements made during the search) negate any possible finding

of good faith.

   The Government concedes that the Warrant fails to mention the crimes for which

evidence is sought.  It argues, however, that the good faith of the officers executing the Warrant

saves the Warrant and requires that suppression be denied.  The Government therefore argues in

favor of a hearing to examine how the Kayla search was conducted.  According to the

Government, a hearing will show that the officers executing the Warrant were briefed on the

parameters of the search by lead Agent Snedeker, who had full knowledge of the crimes for

which evidence was sought.  The Government further states that, after a hearing, the Court will

conclude that the fruits of the Kayla search must be saved from the extreme remedy of exclusion.

   1. <u>Legal Principles</u>

   a. <u>The Fourth Amendment Warrants Clause</u>

   The Fourth Amendment commands that "no warrants shall issue, but upon probable

cause, supported by Oath or affirmation, and particularly describing the place to be searched, and

the persons or things to be seized."  U.S. Const. Amend. IV.  The warrants clause both "requires

particularity and forbids overbreadth."  <u>United States v. Cioffi</u>, 668 F. Supp. 2d 385, 390

(E.D.N.Y. 2009).  The particularity requirement traces directly back to "the English Crown's use

of general warrants, which often allowed royal officials to search and seize whatever and

whomever they pleased while investigating crimes or affronts to the Crown . . . The principal

evil of the general warrant was addressed by the Fourth Amendment's particularity requirement." Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011) (citation omitted).  This requirement "serves three related purposes: preventing general searches, preventing the seizure of objects upon the mistaken assumption that they fall within the magistrate's authorization, and preventing the issuance of warrants without a substantial factual basis."  United States v. Young, 745 F.2d 733, 759 (2d Cir. 1984) (citation omitted).

There are "three components" to the particularity requirement.  See United States v. Galpin, 720 F.3d 436, 445 (2d Cir. 2013).  "First, a warrant must identify the specific offense for which the police have established probable cause."  Id. (citing United States v. Bianco, 998 F.2d 1112, 1116 (2d Cir. 1993)); see, e.g., United States v. George, 975 F.2d 72, 76 (2d Cir.1992) (holding that warrant was insufficiently particular where it authorized officers to search for any other evidence "relating to the commission of a crime").  "Second, a warrant must describe the place to be searched."  Galpin, 720 F.3d at 445–46 (citing United States v. Voustianiouk, 685 F.3d 206, 211 (2d Cir. 2012)).  "Third, the warrant must specify the 'items to be seized by their relation to designated crimes.'"  Galpin, 720 F.3d at 446 (quoting United States v. Williams, 592 F.3d 511, 519 (4th Cir.2010)); see, e.g., United States v. Buck, 813 F.2d 588, 590–92 (2d Cir.1987) (finding that a warrant lacked the required particularity where it authorized seizure of "any papers, things or property of any kind relating to previously described crime").

A warrant will pass muster under the particularity clause if it allows "the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize.'"  Cioffi, 668 F. Supp. 2d at 390 (quoting George, 975 F.2d at 75); see also United States v. Liu, 239 F.3d 138, 140 (2d Cir. 2000) ("A warrant must be 'sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what

15

items to seize.'") (quoting United States v. LaChance, 788 F.2d 856, 874 (2d Cir. 1986)) (alteration in original).

A broadly described search, standing alone, does not invalidate a warrant. "The level of specificity required by the Fourth Amendment depends on many factors. The nature of the crime, for example, may require a broad search." United States v. Dupree, 781 F. Supp. 2d 115, 149 (E.D.N.Y. 2011) (citing Cioffi, 668 F. Supp. 2d at 391). "'Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant.'" Buck, 813 F.2d at 590 (quoting Young, 745 F.2d at 759). However, a warrant that includes nothing but boilerplate terms will likely violate the Fourth Amendment. See Buck, 813 F.2d at 591; see also George, 975 F.2d at 75 (explaining that warrant is sufficiently particular only if it "enable[s] the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize").

Warrants are generally found to be insufficiently particular where nothing on the face of the warrant tells the searching officers for what crime the search is being undertaken. Thus, a warrant will fail for lack of particularity where it authorizes a general search for "evidence of violation of" unspecified state or Federal law. Galpin, 720 F.3d at 447; see also United States v. Hickey, 16 F. Supp. 2d 223, 239 (E.D.N.Y. 1998) (warrant improperly failed to identify "the nature of the suspected wrongdoing triggering the search[]"), motion for reconsideration granted on other grounds, 48 F. Supp. 2d 214 (E.D.N.Y. 1998); Roberts v. United States, 656 F. Supp. 929, 935 (S.D.N.Y.1987) (finding warrant containing "no restriction to any specific wrongful transaction to which the documents were related" lacked sufficient particularity), rev'd on other

grounds, 852 F.2d 671 (2d Cir.1988).  Second, warrants will frequently lack particularity where they include a general, catch-all paragraph or provision, often one authorizing the seizure of any or all records of a particular type.  Id.  (quotation marks, citations, and alterations omitted). Courts do not require that a defendant demonstrate both of these deficiencies; rather, one or the other will typically render a warrant unconstitutional.  See George, 975 F.2d at 75-76 (finding that warrant lacked particularity where it did not alert the searching officers to the crimes at issue); Buck, 813 F.2d at 591 (holding that warrant lacked particularity because it contained catch-all provisions).

Importantly, documents outside of the warrant, such as the affidavit that was submitted in support of issuance of the warrant, can be relied upon to satisfy the particularity requirement only if attached and incorporated into the warrant by reference.  See United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010) ("[W]e may no longer rely on unincorporated, unattached supporting documents to cure an otherwise defective search warrant."); George, 975 F.2d at 76 ("Resort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it."); cf. Groh v. Ramirez, 540 U.S. 551, 557, (2004) (noting that "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents"); United States v. Waker, 463 F. Supp. 2d 348, 363 (W.D.N.Y. 2006) (reading a warrant as including facts set forth in an affidavit where the warrant stated: "see attached Affidavit as to of [sic] Items to be Seized, all of which are fruits, evidence and instrumentalities of violations of 18 U.S.C. § 922(g)(1) all of which are more fully described in the affidavit filed in support of this warrant which is incorporated herein by reference").

b.      The Exclusionary Rule and the Good Faith of the Executing Officers

"The fact that a Fourth Amendment violation occurred – i.e., that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies." Herring v. United States, 555 U.S. 135, 140 (2009) (citing Illinois v. Gates, 462 U.S. 212, 223 (1983)).  The exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." United States v. Leon, 468 U.S. 897, 920 (1984).  However, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." Id. at 922 (citation omitted).  "[I]n some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." Id. at 922-23.  However, "depending on the circumstances of the particular case, a warrant may be so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Id. at 923.

When determining whether evidence seized pursuant to a facially invalid warrant must be suppressed, a court must be mindful that exclusion "has always been our last resort, not our first impulse." Herring, 555 U.S. at 140 (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)). The "good faith" rule allows the introduction of evidence seized in violation of the Fourth Amendment unless the "police conduct [was] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at 144.  Police conduct that is "deliberate, reckless, or grossly negligent conduct," is the type of conduct that must be deterred by application of the exclusionary rule.  Id.

In deciding whether officers have acted in good faith, the court applies an objective standard and seeks to determine whether "a reasonably well trained officer would have known

that the search was illegal' in light of 'all of the circumstances.'" Id. at 145 (quoting United States v. Leon, 468 U.S. 897, 922 n. 23 (1984)). Moreover, the good faith exception should not be read so as to "swallow the exclusionary rule." Davis v. United States, 564 U.S. 229, 258 (2011) (Breyer, J., dissenting). Relevant here is the recognized law that a warrant that fails to specify a particular crime is deemed "so unconstitutionally broad that no reasonably well-trained police officer could believe otherwise." George, 975 F.2d at 77.

  2. <u>Disposition of the Motion</u>

  a. <u>The Warrant Violates the Particularity Clause</u>

  Both parties agree that the Warrant did not specify a particular crime. (DE [29] at 37; DE [39-1] at 28.) Moreover, the Supreme Court of the United States and the Second Circuit Court of Appeals have made clear that reference to supplementary documents cannot automatically save an overly broad warrant from a lack of particularity. See Groh, 540 U.S. at 554–57 (finding that federal agent violated clearly established law when he executed a search warrant that lacked particularity). In Groh, the Supreme Court rejected the notion that agents can execute a facially deficient search warrant, and then later claim the legal benefits of an unincorporated affidavit by asserting that they complied with its secret terms. See id. at 557-63.

  Similarly, the Second Circuit held in United States v. Rosa, 626 F.3d 56 (2d. Cir. 2010), that "[t]he Fourth Amendment by its terms requires particularity in the warrant, not the supporting documents." Rosa, 626 F.3d at 61 (quoting Groh, 540 U.S. at 557). In holding that the warrant at issue violated the Fourth Amendment's particularity requirement, the Second Circuit found that while the warrant directed officers to seize and search "certain electronic devices," it provided them with "no guidance as to the type of evidence sought." Id. at 62 (citing George, 975 F.2d at 76). As a result, the warrant "failed to describe with particularity the

evidence sought and, more specifically, to link that evidence to the criminal activity supported by probable cause," resulting in a violation of the Fourth Amendment.  Id. (citing Bianco, 998 F.2d at 1116).

In this case, the Affidavit is not referenced in the Warrant and neither is any crime.  In view of the law's prohibition on cross-referencing of unnamed documents and crimes to save a warrant that so lacks particularity, the Court holds (and the parties appear to agree) that the Warrant violated the Fourth Amendment.  Having determined that the Warrant is unconstitutional on its face, the Court turns to address the question of whether the fruits of the Kayla search may be saved by the good faith of the executing officers.

      b.    Application of the Exclusionary Rule

At the outset, the Court rejects Drago's position that violation of the particularity clause must always lead to suppression, and that there are therefore no circumstances that can ever save a facially invalid warrant.  The Second Circuit has not applied the law as Drago seeks, and has instead noted the factual nature of the question of whether the remedy for execution of a facially invalid warrant must always be exclusion.  Thus, the Circuit has held that a factual determination must precede deciding whether to exclude the fruits of a search conducted pursuant to a warrant the lacked constitutional particularity.  See Galpin, 720 F.3d at 453 (remanding case involving execution of facially invalid warrant for factual determination as to, inter alia, the good faith of officers executing the warrant).  The Court, therefore turns to consider the application of the good faith doctrine to this case.

The purpose of the exclusionary rule is to "deter police misconduct rather than to punish the errors of judges and magistrates."  Leon, 468 U.S. at 916.  Therefore, the court should suppress evidence "only if it can be said that the law enforcement officer had knowledge, or may

properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id. at 919 (quoting United States v. Peltier, 422 U.S. 531, 542 (1975)).  A review of cases deciding the exclusionary issue in contexts similar to those before the Court in this matter reveals that there is daylight between (1) a finding that an officer acted in an objectively unreasonable manner and (2) a finding that the interests of deterrence and culpability weigh in favor of suppression.

The Court notes the similarity of the facts here to those before the court in United States v. George, 975 F.2d 72 (2d Cir. 1992).  There, officers executed a warrant in connection with an armed robbery.  See id. at 74.  Like the warrant here, the warrant in George failed to list any particular crime for which the search was ordered.  See id. at 76.  The government argued that the seized evidence should not be suppressed because the officers acted in good faith.  See id. at 77.  The Second Circuit rejected this argument because "a warrant not limited in scope to any crime at all is so unconstitutionally broad that no reasonably well-trained police officer could believe otherwise."  Id. at 77.  Therefore, the good faith exception was inapplicable.  See id. at 78.  Here, as in George, the warrant failed to list any specific crime.  It is therefore difficult to presume that the IRS agents that searched Drago's business could not have "reasonably presumed [the warrant] to be valid," Leon, 468 U.S. at 923, and therefore could not likely have "relied upon" the warrant "in good faith."  George, F.2d at 77.

However, the Second Circuit has also made clear that there are, indeed, factual circumstances where the good faith actions of officers executing a facially invalid warrant saves the fruits of that warrant from exclusion.  In any such case, "[t]he burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance" on a defective warrant."  George, 975 F.2d at 77 (citation omitted).  In this vein and in support of its position

that the exclusionary rule should not apply, the Government principally relies on United States v. Rosa, 626 F.3d 56, 58 (2d. Cir. 2010).  In that case, the police suspected that defendant possessed and had produced child pornography.  See id. at 58.  This belief was based upon the recent testimony of two young victims.  See id. at 58.  Faced with significant "time pressures," the police sought and executed what was later deemed to have been a defective search warrant between the hours of 2:00 a.m. and 5:00 a.m.  See id. at 64.  The warrant there, like the Warrant here, was defective because it did not list the crimes for which defendant's property was being searched.  See id. at 62.

Although the warrant in Rosa was facially defective, the court did not suppress the evidence seized.  The court took into consideration the "time pressures" that law enforcement faced.  See id. at 64.  In addition, the County Investigator, whose warrant affidavit described the child pornography and molestation allegations in detail, led the search and seizure.  See id. at 65. There was "no evidence" that the Investigator and the police "relied on the defective warrant, as opposed to their knowledge of the investigation and the contemplated limits of the town justice's authorization." Id. at 66.  The Rosa court also weighed the deterrent effect of the exclusionary rule on police misconduct with the societal costs of suppressing relevant evidence.  See id. at 64. Ruling narrowly, the Second Circuit held that under the facts there, "the benefits of deterrence do not outweigh the costs." Id. at 66.  As Rosa makes clear, "application of the exclusionary rule will vary in accordance with the facts of each case." Id. at 66.  Thus, the rule was not appropriate to apply in a case involving a high stakes search, conducted under severe time constraints, in pursuit of an alleged child abuser.[4]

---

[4]     The time pressure involved in execution of the warrant in Rosa bears little resemblance to the facts here.  Here, the Government sought and obtained the Warrant on July 29, 2013.  (DE

Here, there is no question but that the factual question of good faith has been put squarely at issue by the Defendant.  In particular, Drago asserts that the agents who conducted the search recognized that the warrant was facially defective.  (DE [24-1] at 32.)  These agents proceeded to search Drago's business anyway.  (Id.)  Additionally, as stated at the June 11 conference, Defendant takes the position that the infirmity of the Warrant was brought to the attention of an officer conducting the search, but he nonetheless elected to proceed with what he knew to be an unconstitutional search.  The Government disputes Drago's version of the facts and seeks to avoid suppression.  (DE [50] at 25.)  However, as described above, the burden is on the Government to show that the agents did not know about the defect, or could not be "charged with" knowing about the defect.  George, 975 F.2d. at 78; see also Leon, 468 U.S. at 916.

The parties' differing version of the facts, along with the narrow good faith window that the Second Circuit has been willing to open to save a facially invalid warrant, leads the Court to conclude that a hearing is necessary to decide whether or not the Government is entitled to rely on the good faith of those executing the Warrant so as to deny the motion to suppress.  At that hearing, the Government should produce witnesses who can attest to the conduct of the search. If Defendant is aware of the identity, or general description of the officer alleged to have had the conversation referred to above, he is directed to advise the Government of that information and that person should be present at the hearing.  In any event, the Government must produce at the hearing an officer who can testify as to the facts surrounding the execution of the Warrant. The Court notes that the Government indicated that there were between twelve and thirteen officers involved in the execution of the Warrant.  It is likely not necessary for all of these officers to

---

[24-1] at 30; DE [29] at 11.)  However, it did not execute the warrant until a week later, on August 6, 2013.  (DE [24-1] at 31; DE [29] at 12.)

testify.  However, this Court reserves decision as to the number of witnesses necessary to the hearing on this issue and will revisit it after hearing direct and cross-examination of any witnesses produced.

RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Defendant's motion to dismiss be denied without prejudice.  It is further recommended that the motion for a <u>Franks</u> hearing be denied.  A hearing with respect to the motion to suppress based upon the Warrant will be held, as previously scheduled, on July 23, 2019 at 10:00 a.m. in Courtroom 830, Alfonse M. D'Amato U.S. Courthouse, Central Islip, New York.  All counsel shall appear.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated:  Central Islip, New York
        June 25, 2019                                          /s/        Anne. Y. Shields
                                                        ANNE Y. SHIELDS
                                                        United States Magistrate Judge