ALB:BTR:BTK
F.#2018R01591

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 1 2019 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JOHN DRAGO,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

SUPERSEDING
INDICTMENT

Cr. No. <u>18-394 (S-1) (SJF)</u>
(T. 18, U.S.C., §§ 982(a)(1), 982(b)(1),
1957, 2 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 26, U.S.C., § 7202; T. 31,
U.S.C., §§ 5313(a), 5317(c)(1)(A),
5317(c)(1)(B), 5318(h)(2), 5322(a),
5322(b), 5324(a)(3) and 5324(d)(1))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

I.  <u>The Defendant and His Companies</u>

  1. The defendant JOHN DRAGO owned and operated check cashing businesses in Nassau County, New York and Suffolk County, New York. DRAGO's check cashing businesses included Kayla Check Cashing Corp., North Island Check Cashing Corp., South Island Check Cashing Corp., East Island Check Cashing Corp., Bay Shore Check Cashing Corp. and Brentwood Check Cashing Corp. (collectively, the "Kayla Companies"). Check cashing businesses were required to be licensed by New York State and registered with the United States Department of the Treasury.

  2. The defendant JOHN DRAGO owned Hogwarts, Inc. ("Hogwarts"), a management company that paid salaries to the Kayla Companies' employees.

3.      The defendant JOHN DRAGO maintained an office within, and managed the daily activities of, the Kayla Companies and Hogwarts from the offices of Kayla Check Cashing Corp. in Farmingdale, New York ("DRAGO's Office"). Checks received by the Kayla Companies were delivered to DRAGO's office, where the checks were centrally processed, bank deposits were prepared and cash was distributed to the Kayla Companies.

4.      The defendant JOHN DRAGO controlled the operations of the Kayla Companies. DRAGO hired employees, appointed managers, set salaries and hired agents and salesmen to recruit businesses as customers to cash checks at the Kayla Companies. DRAGO also authorized the amount each customer was charged for cashing checks, approved the advancing of money to customers and the cashing of post-dated checks, and controlled all of the Kayla Companies' bank accounts.

5.      The defendant JOHN DRAGO was the compliance officer for each of the Kayla Companies. As the compliance officer, he was responsible for setting policies and instructing employees to meet all federal and state regulations. DRAGO determined what information concerning the Kayla Companies' financial activities was reported and when it was reported. DRAGO reviewed reports required to be filed with federal and state agencies.

II.     Internal Revenue Laws and Regulations

6.      Pursuant to Title 26 of the United States Code, employers, including the Kayla Companies and Hogwarts, had a duty to collect, truthfully account for and pay over to the Internal Revenue Service ("IRS") Federal Insurance Contributions Act ("FICA") taxes, and to file an Employer's Quarterly Federal Tax Return, Internal Revenue Service Form 941 ("Form 941"). FICA required the payment of taxes by employees and employers

to fund various federal benefit programs, including Social Security and Medicare. As the owner and operator of the Kayla Companies and Hogwarts, the defendant JOHN DRAGO was required to collect, truthfully account for and pay over to the IRS FICA taxes withheld from employees that were due and owing.

7. The defendant JOHN DRAGO paid wages and commissions to employees of the Kayla Companies in cash (the "Cash Wages"), and failed to accurately inform the IRS of the payment of these Cash Wages. As a result, the Kayla Companies filed false Forms 941 quarterly for 2010 through July 31, 2013 with the IRS, in which DRAGO knowingly and falsely underreported the gross wages paid to employees and avoided paying the full amount of FICA taxes that the Kayla Companies owed.

III. The Bank Secrecy Act

8. The Bank Secrecy Act ("BSA"), codified at Title 31, United States Code, Sections 5313-5326, was a set of laws and regulations enacted by Congress to address an increase in criminal money laundering through financial institutions.

9. The Kayla Companies were money service businesses involved in check cashing that qualified as financial institutions within the meaning of the BSA. A check casher was a person or business engaged in the business of cashing checks for other people in amounts greater than $1,000 in currency (such as cash) or other monetary instruments, for any person, on any day, in one or more transactions. A check casher would typically charge a fee for this service. Check cashers enabled people to cash checks without having to go to a bank or have a bank account.

10. Transactions in currency were defined as transactions involving the physical transfer of money, as defined in Title 31, Code of Federal Regulations, Section 1010.100(bbb)(2).

11. Domestic financial institutions were required to file a Currency Transaction Report ("CTR") with the Financial Crimes Enforcement Network ("FinCEN") for each transaction in currency, such as a deposit, withdrawal, exchange of currency or other payment or transfer by, through or to a financial institution, in excess of $10,000, as required by Title 31, United States Code, Section 5313 and Title 31, Code of Federal Regulations, Section 1010.311. A CTR was required, among other reasons, when a person cashed multiple checks on a single day and the total value of those checks exceeded $10,000, or when a person cashed a single check totaling more than $10,000.

12. CTRs were filed on forms that required, among other things, disclosure of the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

13. In addition, the BSA required check cashers to develop, implement and maintain an effective anti-money laundering program reasonably designed to prevent the check casher from being used to facilitate money laundering. See Title 31, Code of Federal Regulations, Section 1022.210. The program was required to have written policies, procedures and controls governing the verification of customer identification, the filing of reports such as CTRs, the creation and retention of records, responses to law enforcement requests and other compliance with BSA requirements. Such a program further required the check casher to have a compliance officer, who would be responsible for assuring that the check casher complied with all BSA requirements.

14. The Kayla Companies were registered with FinCEN as money service businesses and were domestic financial institutions, as defined in Title 31, United States Code, Section 5312. As a result, the Kayla Companies were subject to the CTR reporting requirements of the BSA.

IV. <u>The Structuring Activity and Failure to File CTRs</u>

15. At various times, the defendant JOHN DRAGO, as owner and compliance officer of the Kayla Companies, instructed employees to (1) cash multiple checks totaling more than $10,000 in a single day for certain customers, without filing required CTRs; (2) process checks provided in a single day over the course of a number of days, so that they did not appear to have been provided to the Kayla Companies on the same day; (3) hold checks received on a single day, but bearing different dates, and then present them separately on different dates; and (4) tell certain customers who presented checks in amounts over $10,000 to return with multiple checks in amounts less than $10,000, thereby avoiding filing required CTRs.

<u>COUNT ONE</u>
(Failure to Maintain an Effective Anti-Money Laundering Program)

16. The allegations contained in paragraphs one through 15 are realleged and incorporated as if fully set forth in this paragraph.

17. On or about and between August 1, 2010 and May 1, 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN DRAGO, together with others, did knowingly and willfully violate the Bank Secrecy Act, Title 31, United States Code, Sections 5318(h)(2) and 5322, and a regulation issued thereunder, to wit: Title 31, Code of Federal Regulations, Section 1022.210(a), by

failing to develop, implement and maintain an effective anti-money laundering program at one or more domestic financial institutions and money services businesses, to wit: the Kayla Companies.

18. Specifically, the defendant JOHN DRAGO, together with others, did knowingly and intentionally fail to implement and maintain effective policies, procedures and internal controls for (1) filing accurate and truthful CTRs for customers receiving in excess of $10,000 in currency in a single day, as required by the BSA; and (2) providing adequate education and training of appropriate personnel concerning their responsibilities under the anti-money laundering program.

19. The defendant JOHN DRAGO, together with others, took actions designed to prevent the implementation and maintenance of an effective anti-money laundering program, in that he:

(a) Failed to create and implement procedures to confirm that endorsements set forth on multiple-payee checks were genuine to avoid processing forged checks;

(b) As compliance officer, failed to ensure that employees of the Kayla Companies properly advised customers not to structure their cashing of checks to avoid filing of CTRs;

(c) Agreed to accommodate requests by certain customers that CTRs not be filed as to transactions involving the transfer of currency in excess of $10,000 in a single day;

(d) Failed to file CTRs for one or more customers who had presented checks that in aggregate totaled more than $10,000 in a single day; and

(e) Failed to provide accurate records of customers' cash transactions to employees of the Kayla Companies responsible for preparing CTRs.

(Title 31, United States Code, Sections 5318(h)(2) and 5322(a); Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT TWO
(Engaging in Unlawful Monetary Transactions)

20. The allegations contained in paragraphs one through 15, 18 and 19 are realleged and incorporated as if fully set forth in this paragraph.

21. In or about and between January 2015 and May 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN DRAGO, together with others, did knowingly and intentionally engage in monetary transactions, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and was derived from specified unlawful activity, to wit: Possession of Forged Securities, in violation of Title 18, United States Code, Section 513(a), knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity.

(Title 18, United States Code, Sections 1957, 2 and 3551 et seq.)

COUNT THREE
(Failure to File CTRs)

22. The allegations contained in paragraphs one through 15, 18 and 19 are realleged and incorporated as if fully set forth in this paragraph.

23. On or about and between January 1, 2010 and October 31, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN DRAGO, together with others, for the purpose of evading

the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations prescribed thereunder, did knowingly and willfully cause and attempt to cause one or more domestic financial institutions, to wit: the Kayla Companies, to fail to file one or more reports required by Title 31, United States Code, Section 5313(a) and the regulations prescribed thereunder, when involved in one or more transactions for the payment, receipt and transfer of United States coins and currency in amounts the Secretary of the Treasury prescribed by regulation, as part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

(Title 31, United States Code, Sections 5313(a) and 5322(b); Title 18, United States Code, Sections 2 and 3551 et seq.)

### COUNT FOUR
(Structuring Financial Transactions)

24. The allegations in paragraphs one through 15, 18 and 19 are realleged and incorporated as if fully set forth in this paragraph.

25. On or about and between August 1, 2010 and October 31, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN DRAGO, together with others, for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations prescribed thereunder, did knowingly and intentionally structure and assist in structuring one or more financial transactions with one or more financial institutions, to wit: the Kayla Companies, by (a) directing employees to deposit and cash, over the course of several days, checks that were submitted together on a single day, that together were in amounts in excess of $10,000; and (b) instructing employees to tell certain customers who

presented individual checks in amounts exceeding $10,000 to return with multiple checks each in amounts less than $10,000.

(Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNTS FIVE THROUGH NINE
(Failure to Collect and Pay Over Taxes)

26. The allegations contained in paragraphs one through 15 are realleged and incorporated as if fully set forth in this paragraph.

27. On or about and between April 1, 2012 and July 31, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN DRAGO, together with others, being the owner and operator of the Kayla Companies, and thereby being required to collect, truthfully account for and pay over FICA taxes to the IRS, did knowingly and intentionally fail to collect, truthfully account for and pay over FICA taxes to the IRS as set forth below:

| COUNT | TAX QUARTER | DUE DATE OF TAX FILING |
|---|---|---|
| FIVE | 2nd Quarter 2012 | July 31, 2012 |
| SIX | 3rd Quarter 2012 | October 31, 2012 |
| SEVEN | 4th Quarter 2012 | January 31, 2013 |
| EIGHT | 1st Quarter 2013 | April 30, 2013 |
| NINE | 2nd Quarter 2013 | July 31, 2013 |

(Title 26, United States Code, Section 7202; Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT TWO

28. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

29. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS THREE AND FOUR

30. The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts Three and Four, the government will seek forfeiture in accordance with Title 31, United States Code, Section 5317(c)(1)(A), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

31. If any of the above-described property as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c)(1)(B), to seek forfeiture of

any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 31, United States Code, Sections 5317(c)(1)(A) and 5317(c)(1)(B); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

INFORMATION SHEET

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 1 2019 ★
LONG ISLAND OFFICE

CR 18 394

FEUERSTEIN, J.

SHIELDS, M.J.

1. Title of Case: United States v. JOHN DRAGO

2. Related Magistrate Docket Number(s): N/A

3. Arrest Date: N/A

4. Nature of offense(s): ☒ Felony
   ☐ Misdemeanor

5. Related Cases - Title and Docket No(s). (Pursuant to Rule 50.3.2 of the Local E.D.N.Y. Division of Business Rules): EDNY

6. Projected Length of Trial: Less than 6 weeks ☒
   More than 6 weeks ☐

7. County in which crime was allegedly committed: SUFFOLK/NASSAU

   (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8. Was any aspect of the investigation, inquiry and prosecution giving rise to the case pending or initiated before March 10, 2012.[1]   ☐Yes ☒ No

9. Has this indictment/information been ordered sealed?   ☐Yes ☒ No

10. Have arrest warrants been ordered?   ☐Yes ☒ No

11. Is there a capital count included in the indictment?   ☐Yes ☒ No

RICHARD P. DONOGHUE
United States Attorney

By: [signature]

BURTON T. RYAN
Assistant U.S. Attorney
(631) 715-7853

---

[1] Judge Brodie will not accept cases that were initiated before March 10, 2012.

Rev. 10/04/12